OCEAN CITY LAND COMPANY, PROSECUTOR, v. OCEAN CITY AND OCEAN CITY ASSOCIATION.

Submitted December 9, 1905—Decided February 26, 1906.

An ordinance of a municipality passed under the provisions of an act of the legislature (*Pamph. L.* 1904, *p.* 366), relative to the vacation of land dedicated or devoted to public use, which contains terms that can only be made effective by infringing upon private rights, will be set aside.

On *certiorari.*

Before Justices FORT, GARRETSON and REED.

For the prosecutor, *Charles C. Babcock* and *Bourgeois & Sooy.*

For the defendant Ocean City, *Joseph Thompson.*

For the defendant Ocean City Association, *Bleakly & Stockwell.*

The opinion of the court was delivered by

GARRETSON, J. The Ocean City Association, the owner of a large tract of land in Ocean City, dedicated to certain uses, by filing maps and by oral and written statements, certain of those lands, which it is now sought to free from the public right in them.

The prosecutors own lands, part of the original tract of the Ocean City Association, which they claim are entitled to have such dedication maintained.

This dedication has been before the courts in the cases of *Lennig* v. *Ocean City Association,* 14 *Stew. Eq.* 606, and in *Bridgewater* v. *Ocean City Railway Co.,* 17 *Dick. Ch. Rep.* 276, and the right of the purchasers of lots from the Ocean City Association to prevent that association from devoting

the dedicated lands to any other use than that for which they were dedicated has been sustained.

It is sought to vacate the public rights under the provisions of an act of the legislature entitled "An act relative to the vacation by the governing body of any city, town, township, borough or other municipality of this state of any land situated in such municipality and wholly or partially dedicated or devoted to public use and the extinguishment of all public rights therein," approved March 30th, 1904. *Pamph. L., p.* 366.

This act authorizes the governing body of any of the municipalities mentioned, whenever any land devoted wholly or partially to public use shall be considered or deemed by the governing body of such municipality to be unsuited to or undesirable for such public use, or otherwise useless, burdensome or disadvantageous to the public or such municipality, by ordinance, and on such terms as it shall prescribe, with the consent of the owner in fee, to vacate or extinguish the public rights in and to any land dedicated or devoted wholly or partially to public use, and to restore the said land to the holder of the legal fee thereof freed, and discharged from all such public rights therein as if such public rights therein had never existed. Other provisions in the act require the proposition to vacate to be submitted to the qualified voters of the municipality, and that the ordinance shall become effective only when approved by a majority of the qualified voters voting at the election.

On the 10th of October, 1904, the Ocean City Association presented a proposition to the city council of Ocean City proposing terms on which the council would co-operate with the association in removing the restrictions on the camp ground.

On the same day the council passed a resolution to accept certain parts of the proposition of the association.

On the same day an ordinance was introduced, entitled "An ordinance relative to the vacation of certain lands situate, lying and being at Ocean City, Cape May county, New Jersey, between Fifth and Sixth streets, and extending from

the Atlantic ocean to Beach thoroughfare (an arm of Great Egg Harbor bay), dedicated to public use and the extinguishment of all public rights therein."

This ordinance was adopted at a special meeting held October 11th, 1904, and approved the same day.

It contains recitals that the Ocean City Association recorded a map in June, 1880, which shows an open space between Fifth and Sixth streets, marked "Camp Ground," in the centre of the block; that in 1881 the association issued a pamphlet which referred to said camp ground and also referred to the map comprising nine hundred and ninety-five lots, besides the camp ground, tenting ground and parks; that in 1882 the association published a pamphlet and referred to the camp ground park as follows: "The camp ground park, extending from Fifth to Sixth streets and from Asbury to Wesley avenues, has been fully graded and laid out into plots," &c., and in the last-mentioned pamphlet was contained a printed plan of a portion of the camp ground park referred to and on which plan was printed the words "Park," "Auditorium" and "Grove," &c.; that in 1883 the association filed another map, on which the space between Fifth and Sixth streets is indicated to be open from the bay to the ocean, making in all seven blocks; that two of the blocks in said open space are marked "Park" and one of them is marked "Grove," and the block between Wesley avenue and Asbury avenue and Fifth and Sixth streets is marked with the words "Auditorium" and "Camp Ground;" that it is alleged and claimed that the whole of said lot of land between Fifth and Sixth streets, and extending from the Atlantic ocean to said Great Egg Harbor bay, or arm or part thereof, has been wholly or partially dedicated or devoted to public use by virtue of said maps, publications and other acts of said association; that all of said land, excepting the square or block bounded by Wesley and Asbury avenues and Fifth and Sixth streets, is deemed by the governing body of the city to be unsuited to and undesirable for such public use, and the maintenance of the same in its present condition considered to be otherwise burdensome and disadvantageous to the public and

the said municipality, and in pursuance of the act of 1904, *supra,* ordains, in section 1, that the plots or lots of ground at Ocean City located between Fifth and Sixth streets and extending from Beach thoroughfare to the Atlantic ocean, with the exception of the square or block bounded by Wesley avenue and Asbury avenue and Fifth and Sixth streets, are, in their present condition, unsuited to and undesirable for public use, &c., as in the recital.

In section 2 it is ordained that, with the consent of the association, the owner of the legal fee of said ground, and in consideration of the said owner of the fee making certain grants and conveyances in the ordinance afterwards set forth, the rights of the public and the municipality of Ocean City, and all other public rights other than those of the holder of the fee, be and they were thereby vacated and extinguished in the tract described, and were thereby restored to the association, the holder of the legal fees thereof, freed and discharged from all public rights therein as if such public rights therein had never existed, as provided by the act of 1904, *supra.*

In section 3 it is ordained that, in consideration of such vacation and extinguishment, and on the proper and lawful removal of the said alleged dedications and restrictions now affecting the same, the association shall convey by deed, in the usual form, to Ocean City, eighteen lots, describing them, subject to a restriction that none of them shall be leased or used for baseball, football or other athletic purposes; further, that the association shall pay $10,000 in cash to Ocean City, to be used in the erection of two school buildings; further, that the association, within one year, is to make improvements on the land so vacated by the erection of houses or other buildings thereon, to the amount of at least $10,000, and further, that immediately after the passage of the ordinance the association is to grant and convey to Ocean City the right to erect a plank or boardwalk, of a width of thirty-two feet, over and across any of the property of the association at Ocean City on the beach front, between Fifth and Seventeenth streets, according to the plan of the municipality.

Section 4 provides that the ordinance shall not be effective, until submitted to and approved by the voters of Ocean City.

Section 5 provides the form of ballot to be used at the election.

On the same 11th of October, 1904, two resolutions were adopted, one submitting the proposition to a vote of the voters and the other prescribing the notice of election to be given.

An election was held. A majority of the voters was in favor of the proposed vacation.

Among the reasons assigned for setting aside the action of the common council is that no consent to the proposed vacation of the public rights was obtained from the owner of the fee.

We think that this reason is not sustained.

No form of consent is required by the act. The ordinance itself provides that it shall not be effective unless by the consent of the owner. The owner of the fee is not objecting to the ordinance.

The association presented the proposition in the first instance to the common council. Modifications in the proposition were made by the common council. It appears that the president of the association agreed to these modifications in the meeting of the council where they were discussed. It appears from the minutes of the board of directors of the association that the ordinance was accepted by the association, and the officers were instructed to execute a deed for the right of way for the boardwalk in accordance with the ordinance, and this deed was executed. We think the consent of the owner of the fee to the vacation mentioned in the ordinance sufficiently appears.

Another reason assigned for setting aside the proceedings of the common council is that the act of March 30th, 1904, is unconstitutional in that it is special. It is claimed that it is special in that it applies only to such owners of the fee in lands dedicated to a public use as shall consent to the vacation of the dedication, and that the proceeding to vacate

must be initiated by the landowner. We think this is an entire misconception of the purpose of the act. The act is general in form, applies to all the classes of municipalities mentioned in it, and confers a power of municipal government upon them which some of them did not before possess. It is not an act conferring power upon individual landowners.

The same argument would make unconstitutional powers conferred upon many municipalities incorporated under general laws to vacate streets, or to make street improvements upon the application of landowners, or the power to lay trolley railroad tracks in streets and roads upon obtaining the consent of a certain proportion of the landowners. This act seems to be constitutional.

Neither do we think the proceedings void because of the failure of the common council to determine beforehand that said lands were unsuited or undesirable for the public use to which they were dedicated, or that they were useless, burdensome or disadvantageous to the municipality. They so declared in the ordinance itself.

It is also urged against the alleged vacation that the land in question has not been dedicated to public use, and that there is no public right to vacate.

When we examine what are claimed to be dedicatory acts we find the filing of two maps, in one of which the lands in question are marked "Camp Ground," and on the other the space between Fifth and Sixth streets is indicated to be open, and that two of the blocks in the open space are marked "Park" and one of them marked "Grove," and one block is marked with the words "Auditorium" and "Camp Ground." On the other map the space is indicated to be open. In the statements issued there is reference to camp ground, tenting ground and parks; also, in one of the statements, it is said, "the camp ground park, extending from Fifth to Sixth streets and from Asbury to Wesley avenues, has been fully graded," and contained a printed plan of a portion of the camp ground park referred to, and on which plan was printed the words "Park," "Auditorium" and "Grove."

It may be very doubtful whether these acts were dedica-

tions of the properties indicated to the use of the public represented by the municipality or were any more than notices to the purchasers of lots in the same tract that the association itself devoted the lands to those purposes.

There is nothing in the case to indicate that there was ever any acceptance by the municipality of any dedication made by the association of the property in question. We do not deem it necessary to decide whether the lands in question had been dedicated to any public use or whether there was any public right for the municipality to vacate.

The manner in which the power conferred upon the municipality by the legislature has been exercised renders their action void. The act authorizes the vacation of the public right "upon such terms as" the governing body of the municipality shall prescribe. These terms must be legal and lawful. They must not be terms which shall violate private rights or which may lead to such violation. The public rights in question are vacated and extinguished by the ordinance upon these terms and others, viz., that the association convey to the city eighteen lots upon which the public right existed; that the association pay the city $10,000, to be used in erecting school-houses in other parts of the city, and that the association is to make improvements upon the land vacated by the erection of buildings thereon to the amount of at least $10,000. These terms assume that when the ordinance is passed and the public right vacated that the association will have a right to deal with the lands vacated in such a way as it shall choose. It is to convey eighteen lots to the city for any purpose it chooses to put them to with the single limitation in the ordinance. It is to improve certain of the same lands by buildings to be used by the association for its own purposes. This conveyance and this use will clearly violate the rights of the owners of other lots in the same tract to have the lands in question devoted to the uses as indicated to the purchasers when they bought their lots.

The terms of the vacation are illegal and the ordinance is therefore invalid.

The proceedings removed are set aside, with costs.